THOMAS C. CILLESSEN, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cillessen v. Commissioner
Docket No. 10132-84.
United States Tax Court
T.C. Memo 1985-505; 1985 Tax Ct. Memo LEXIS 121; 50 T.C.M. (CCH) 1177; T.C.M. (RIA) 85505; September 26, 1985. Thomas C. Cillessen, Jr., pro. se. James Gehres, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HEMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and imposed additions to tax as follows: Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1979
$23,340.00
$11,670.00
$975.00
1980
$59,048.00
$29,524.00
$3,762.00
The sole issue remaining for *122 decision is whether any part of the underpayment for each of the years at issue was due to fraud. [2]
FINDINGS OF FACT Petitioner resided in Thornton, Colorado, when he filed his petition in this case. During the taxable years 1978, 1979, and 1980, petitioner was engaged in a tax return preparation business. Petitioner also represented taxpayers in practice before the Internal Revenue Service. Petitioner had an office from which he conducted his business and employed at least seven people in 1979 and six people in 1980, including two tax return preparers. Petitioner operated his business under the name of "Chaos." On October 1, 1979, petitioner formed a corporation under the same name. In the fall of 1981 Rick Hector ("Agent Hector"), a revenue *123 agent employed by the Internal Revenue Service, was assigned to examine petitioner's 1978 Federal income tax return. During his examination of petitioner's 1978 Federal income tax return, Agent Hector determined that petitioner had filed no Federal income tax returns for 1979 and 1980 and subsequently had these years assigned to him for examination. Petitioner had filed Federal income tax returns for taxable years prior to 1978. Agent Hector had four interviews with petitioner regarding the examination of his taxable years 1978, 1979, and 1980. Agent Hector also had several telephone conversations with petitioner to discuss different items. Petitioner did not provide any records during the course of the examination. Petitioner's explanations for his failure to produce records were that his records had been damaged by a tornado, that the records had been lost or misplaced during relocation and that his ex-wife may have taken some of the records. After repeated attempts to obtain records, Agent Hector issued summonses for petitioner's bank records. The items summonsed were bank statements, deposit slips, items deposited and cancelled checks. Agent Hector initially identified *124 banks to which summonses should be issued through discussions with petitioner and his employees. Additional bank accounts were identified through transfers from the bank accounts disclosed through discussions with petitioner and his employees. These bank accounts were in petitioner's name and in the name of "Chaos." Respondent issued a notice of deficiency relating to petitioner's 1978 Federal income tax return on April 11, 1983. On that return petitioner had failed to report any income from his tax return preparation business. Petitioner filed a petition with the Tax Court. This case was disposed of without trial on respondent's motion for judgment on the pleadings pursuant to Rule 120. In the unpublished opinion accompanying the Order and Decision, the Court specifically stated that: With respect to the underlying deficiency determined by respondent herein, petitioner is deemed to have admitted that he omitted $26,270.68 in adjusted gross income from his Federal income tax return which was derived from his business as an income tax return preparer, * * *. Respondent issued a notice of deficiency relating to petitioner's 1979 and 1980 taxable years on January 26, 1984. *125 Respondent computed petitioner's gross income for these years by examining bank records from three banks in 1979 and two banks in 1980. The gross income figure reflected total deposits or items of deposit, where available, with adjustment for "less cash items." Some of the items were identified on their face as "tax prep," "income tax" or similar designations. Other items were state and Federal refund checks which petitioner received by altering the addresses on clients' tax returns and negotiated by using a power of attorney. [3] Expenses were calculated from information received from petitioner. Respondent also estimated the number of clients who employed petitioner's services during 1979 and 1980 by examining deposits made into petitioner's bank accounts during the peak period for filing tax returns. For this period respondent identified 206 separate deposits in 1979 and 469 separate deposits in 1980. In addition respondent obtained a computerized printout of Federal tax returns which petitioner submitted for clients to the Ogden, Utah, *126 Service Center in 1979. The computerized printout showed that at least 374 returns were filed by petitioner with the Ogden, Utah, Service Center in 1979. OPINION Section 6653(b) provides, in pertinent part: (b) FRAUD--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The fraud envisioned by section 6653(b) is an intentional wrongdoing designed to evade a tax believed to be owing. . The burden of proving fraud is on respondent. Sec. 7454(a); Rule 142(b); . Respondent must affirmatively establish by clear and convincing evidence that some part of an underpayment for each year was due to fraud. ; . Although the existence of fraud is never presumed, it may be proved by circumstantial evidence. . *127 Circumstantial evidence which alone or in conjunction with other factors has been sufficient to sustain imposition of the addition to tax for fraud includes failure to file Federal income tax returns where there is other indicia of fraud, ; consistent failure to report substantial amounts of income over a period of years, ; failure to maintain adequate records, ; and failure to cooperate with respondent's agents during his investigation, , . The sophistication of the taxpayer is also relevant to a determination of fraud. Cf. . A taxpayer's failure to meet his burden of proof as to the deficiency does not constitute proof of fraud. ; . In the situation *128 where the deficiency is computed by a calculation of bank deposits, respondent may establish that such deposits constitute taxable income by negating any potential nontaxable sources or showing that the bank deposits and other items which he used to calculate the deficiency amount are attributable to currently taxable income. See . Respondent may supply the necessary proof by showing a "likely" taxable source for the bank deposits. ; . [4]
Here, the evidence in the record is sufficient to sustain respondent's burden of proving that there was an underpayment in each year which was due to fraud. Respondent computed petitioner's income for 1979 and 1980 by examining bank deposits with adjustment for "less cash items." [5] From the figure calculated as gross income, respondent deducted expense amounts identified by *129 petitioner. Respondent demonstrated that petitioner was engaged in the business of tax return preparation and that he received remuneration for services performed for numerous clients in his tax return preparation business. Consequently, respondent has demonstrated that petitioner had receipts during the years at issue and that the likely source of these receipts was from item s of taxable income. Respondent has further shown that petitioner's failure to report this income in 1979 and 1980 was due to fraud. Petitioner was aware of the requirements of filing Federal income tax returns and reporting all sources of income, having been engaged in a tax return preparation business. Petitioner was also aware of the requirements of maintaining records and cooperating with respondent's agents during an examination of a taxpayer's Federal income tax liability. However, the record clearly indicates that petitioner fulfilled *130 none of these requirements. Petitioner, in fact, failed to provide any records to respondent during his examination of the 1978, 1979, and 1980 taxable years. The reasons petitioner offered for his failure to produce his records varied. Even assuming that petitioner's records had been lost or misplaced as he claimed, we can determine no reason why petitioner did not take affirmative action to assist respondent's efforts to calculate his income. The only affirmative action which petitioner undertook was to disclose two of the bank accounts which he used during the years at issue. We note that an examination of these accounts and others disclosed by petitioner's employees uncovered other bank accounts which were used by petitioner but not disclosed by him. Petitioner's lack of cooperation during respondent's examination and his obvious awareness of his duty to maintain records, file Federal income tax returns and report all sources of taxable income amply support a finding that petitioner's underpayments for the years at issue were due to fraud. In addition the years at issue were not the first years in which petitioner failed to properly report his income. Finally, we note *131 that petitioner had an opportunity to present testimony at the trial of this case but declined to do so. As we stated in , affd. : A record may be judged also by the absence of testimony as well as by its presence. Here, although present in the court room during the hearing, the taxpayer, for his own reasons, elected not to take the stand as a witness. Theoretically, the taxpayer should, in a case such as this, be his own best witness. His unexplained failure to testify gives rise to a presumption that had he testified and told the truth his testimony would have been unfavorable to his cause. . To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. By Order dated December 21, 1984, the parties were directed to meet and to enter into stipulations under Rule 91 to the fullest extent possible. Petitioner failed to comply with this Order, and we granted respondent's "Motion to Partially Dismiss" under Rule 123(b) by Order date March 25, 1985. In this Order we directed that decision be entered against petitioner as to the deficiencies and the additions to tax under sec. 6654.↩
3. At the trial of this case, Agent Hector testified that he had specifically identified seven such checks included in bank deposits.↩
4. See also , affd. in an unpublished opinion .↩
5. There is no evidence in the record that any of the deposits or "less cash" items were attributable to Chaos after its incorporation or that the amounts of the Federal and state refund checks deposited in petitioner's bank account were to be returned to clients.↩